CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

SEP - 6 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DOUGLAS A. HOGLAN, | ) | Civil Action No. 7:16-cv-00595 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| A. DAVID ROBINSON, <u>et al.</u>, | ) | By:  Hon. Jackson L. Kiser |
|     Defendants. | ) |        Senior United States District Judge |

Douglas A. Hoglan, a Virginia inmate proceeding <u>pro se</u>, commenced this action pursuant to 42 U.S.C. § 1983, naming numerous officials of the Virginia Department of Corrections ("VDOC") and Green Rock Correctional Center ("GRCC") as defendants. Presently pending are Plaintiff's motion for a preliminary injunction and Defendants' motion for summary judgment. After reviewing the record, I grant in part and deny in part both parties' motions. A preliminary injunction is stayed for sixty-five days to allow for mediation.

## I.

The VDOC continues to frustrate Plaintiff's receipt of pictures of naked or scantily-clad females. <u>See, e.g.</u>, <u>Hoglan v. Robinson</u>, No. 7:15cv694 (W.D. Va. Mar. 30, 2018); <u>Hoglan v. Robinson</u>, No. 7:13cv258 (W.D. Va. Sept. 19, 2014). This case concerns the VDOC's interception and confiscation of various photos while Plaintiff was confined at GRCC.[1] Plaintiff generally asserts that:

> [D]efendants' practice and article has both subjectively and discriminately excluded content protected under the First Amendment with the exclusions not being reasonably related to any genuine penological goal. They bar otherwise permissible artistic and sexually suggestive images whose subjects are not personally affiliated to the prisoner-recipient that Plaintiff, and those not before the Court, desires. Plaintiff had sought to accrue the desired content in the convenient, less expensive, and physically smaller

---

[1] Unlike past litigation, there is no indication that a sex offender treatment plan was applied to Plaintiff during the events of this litigation.

footprint method of email, but the defendants have procedurally blocked him.

A photo sent to a VDOC facility via postal mail must include the vendor's name and address and a statement of compliance pursuant to 18 U.S.C. § 2257, which regulates depictions of "actual sexual conduct." The VDOC asserts it needs the compliance statement to ensure that the photos are coming from legitimate businesses and that the models depicted in nude or sexually explicit photos are at least 18 years old and consented to the photography.

In March 2016, Plaintiff's mother sent Plaintiff three pictures from the 2016 Sports Illustrated Swimsuit issue via the VDOC's "secure messaging" system.[2] The pictures showed scantily-clad female swimwear models. The VDOC reviewed the photos and did not allow Plaintiff to receive them. The VDOC asserts that Plaintiff could have received the images by postal mail if they were certified pursuant to 18 U.S.C. § 2257, but the VDOC does not require that certification requirement for images sent via secure messaging.

For Your Eyes Only ("FYEO"), which is a commercial photo distributor, sent Plaintiff four photos via email in June 2016 and twenty-five photos via mail in January 2017. The VDOC disallowed most of the photos either due to their purported explicit nature or for lacking vendor identification information and the certification pursuant to 18 U.S.C. § 2257.

For the permitted photos from FYEO, VDOC staff gave Plaintiff five photos only. VDOC Operating Procedure ("OP") 803.1 limits the weight of incoming photos to the lesser of either five 4" x 6" photos or one ounce. The VDOC explains that this restriction promotes order

---

[2] "Secure messaging" is the VDOC's web-based email program that operates on a contracted vendor's server and allows VDOC staff to review all incoming messages and attachments.

and security by allowing mailroom staff to efficiently search, review, and process all inmates' incoming mail.

Another commercial vendor, Curbfeelers, mailed fifteen photos to Plaintiff. VDOC staff disapproved twelve of those photos because they purportedly violated the nudity criteria and portrayed manipulation of genitalia or buttocks.

Plaintiff's repetitive assertions can be distilled to three claims about how Defendants promulgated and applied relevant policies in violation of the First Amendment:

1. Defendants unlawfully prohibited him from receiving emails with images from Sports Illustrated and FYEO.

2. Defendants unlawfully limit his receipt to five pictures per email or envelope.

3. OP 803.1's reliance on 18 U.S.C. § 2257 is unlawfully overbroad and was unlawfully applied to prevent Plaintiff's receipt of photos from the vendor Curbfeelers.

Plaintiff's motion for a preliminary injunction concerns claims two and three only.

## II.
### A.

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing admissible evidence and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the

non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A party is entitled to summary judgment if the admissible evidence as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

## B.

Defendants argue that qualified immunity should shield them from damages in their individual capacities.[3] Qualified immunity protects government officials from "bad guesses in gray areas" and ensures that they may be held personally liable only for "transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992); see In re Allen, 106 F.3d 582, 593 (4th Cir. 1997) ("[A]n official may claim qualified immunity as long as his actions are not clearly established to be beyond the boundaries of his discretionary authority."). Qualified immunity involves a two step inquiry: (1) whether a constitutional or statutory right would have been violated on the alleged facts, and (2) whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201-02 (2001). Clearly established law "includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." Wall v. Wade, 741 F.3d 492, 502-03 (4th Cir. 2014) (quoting Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992)). Case law recognized

---

[3] Eleventh Amendment immunity protects Defendants in their official capacities from damages. See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

4

before March 2016 that a broad ban on commercial photos violated established law. See, e.g., Prison Legal News v. Stolle, No. 2:13cv424, 2015 U.S. Dist. LEXIS 43228, at *25-34, 2015 WL 1487190, at *8 (E.D. Va. Mar. 31, 2015) (collecting cases that found no precedent upholding the constitutionality of correctional policies banning items due to sexually suggestive, non-nude photos); see also Reno v. Am. Civil Liberties Union, 521 U.S. 844, 874 (1997) (declaring it to be "perfectly clear that sexual expression which is indecent but not obscene is protected by the First Amendment"); Procunier v. Martinez, 416 U.S. 396, 408-09 (1974) (recognizing censorship of prison mail impacts the inmate's and society's First Amendment rights to communicate).

### III.

Defendants argue that Plaintiff failed to exhaust available administrative remedies about the denial of photos from Curbfeelers. I agree and grant them summary judgment for that claim.

The exhaustion requirement of 42 U.S.C. § 1997e(a) is mandatory and "applies to all inmate suits about prison life[.]" Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). When a prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust." Id. A defendant has the burden to prove an inmate's failure to exhaust available administrative remedies. Jones v. Bock, 549 U.S. 199, 216 (2007). Once asserted, the burden of proof shifts to the plaintiff to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the plaintiff. See, e.g., Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011). An administrative remedy process does not become "unavailable" when an inmate does not comply with procedural rules. Woodford, 548 U.S. at 95 (2006). A court may not excuse a failure to

5

exhaust available remedies, even to take into account "special circumstances." Ross v. Blake, 578 U.S. ___, 136 S. Ct. 1850, 1856 (2016).

VDOC Department Operating Procedure ("OP") 866.1, the "Offender Grievance Procedure," provides administrative remedies. An inmate must file a regular grievance within thirty calendar days from the date of the occurrence or incident. All issues are grievable except issues about policies, procedures, and decisions of the Virginia Parole Board; disciplinary hearing penalties and/or procedural errors; state and federal court decisions, laws, and regulations; and other matters beyond the VDOC's control.

Plaintiff argues that he was not required to exhaust the specific denial of the Curbfeelers photos in June 2017 because he had previously filed grievances about the applicable OPs.[4] OP 866.1 does not recognize such an interpretation and instead mandates exhaustion of remedies about each incident or occurrence. For example, an inmate who filed a grievance complaining generally about meal policies would not get a blanket exemption for filing a grievance about any particular meal. See id. at 1859 ("When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion."). Accordingly, Plaintiff fails to show remedies were not available, the record establishes that he failed to exhaust remedies about the rejection of photos from Curbfeelers in June 2017, and Defendants are entitled to summary judgment for this claim.

---

[4] Discovery had been stayed based on the assertion of qualified immunity, but that discovery has no bearing on exhaustion of administrative remedies.

## IV.

Inmates clearly retain protections afforded by the First Amendment, but those rights must be balanced with prisons' institutional needs of security, discipline, and general administration. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987). Thus, "a prison regulation that abridges inmates' constitutional rights is 'valid if it is reasonably related to legitimate penological interests.'" Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006) (citing Turner v. Safley, 482 U.S. 78, 84 (1987)). Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of [the] [right] or whether they were able to participate ... other[wise] ...; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns."

Id. at 200 (citing Turner, 482 U.S. at 89-92); see Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (discussing burdens).

OP 803.1, effective January 1, 2015, governs inmate correspondence. Inmates may receive correspondence by mail or secure messaging, commonly known as email. Whether sent by mail or secure messaging, the photo may not depict "nudity," which means cartoon or human genitalia, pubic area, buttocks with less than a full opaque covering of the anus, and the female breast with less than a fully opaque covering of the areola.[5]

Photos sent to inmates via secure messaging are treated as "personal pictures" under OP 803.1. "Personal pictures" depicting "nudity" or a "semi-nude" person is prohibited. "Semi-

---

[5] Plaintiff acknowledges that he is not challenging the policy defining or prohibiting "nudity."

7

nude" "include[s] but is not limited to persons in diapers, underwear, lingerie or swimwear." The VDOC asserts that "unscrupulous vendors" circumvented the procedures prohibiting <u>nude</u> pictures of inmates' family members by offering <u>nude</u> pictures of inmates' wives and girlfriends for sale in VDOC facilities. The VDOC further asserts that <u>nude</u> pictures of inmates' family members create a serious security risk in prison because the photos may be stolen by other inmates, which can lead to fights. The VDOC does not describe why a "semi-nude" photo is treated the same as one depicting "nudity" or how a digital image saved in one inmate's secure messaging account could be "stolen" by another inmate.

### A.

Plaintiff argues that Defendants violated the First Amendment by prohibiting his receipt of "Sports Illustrated images" sent by his mother and various images sent by FYEO. I find that Plaintiff's claim for the Sports Illustrated images defeats the assertion of qualified immunity and that discovery is needed for the images from FYEO.

The VDOC fails to establish that the current policy and practice of prohibiting an inmate's receipt via secure messaging of a photo depicting a swimwear model is reasonably related to a legitimate penological goal. Foremost, the VDOC fails to establish how treating digital photos of clothed models is rationally related to the treatment of photos with "nudity." Also, the VDOC does not address how its fear of theft of "personal images" is valid for digital images saved in an inmate's secure messaging account. Furthermore, the VDOC fails to address Plaintiff's allegations that receiving pictures via mail is not an adequate alternate when those color photos are intercepted, photocopied in black and white, and destroyed before the inmate

8

receives the substandard reproduction.[6] Moreover, the VDOC fails to address how allowing digital photos of swimwear models impacts staff resources; the contractor and staff have already screened the photo for compliance for nudity, gang material, and other VDOC policies. Although it is not clear what rationale supports the VDOC's ban on models in swimwear, it appears the VDOC can control costs and encourage rehabilitation by simply managing the storage limits for an inmate's secure messaging account. Accordingly, Defendants' motion for summary judgment is denied in part as to the ban on "semi-nude" swimwear models.

As for the photos from FYEO, discovery will be needed to understand the images' contents to properly weigh the Turner factors. See, e.g., Ingle v. Yelton, 439 F.3d 191, 196-97 (4th Cir. 2006). Accordingly, Defendants' motion for summary judgment is denied in part as to photos from FYEO.

**B.**

Defendants are entitled to qualified immunity and summary judgment for the claim about permitting only five photos per email or envelope.[7] The VDOC explains that personal mail, which includes incoming photos, is limited to one ounce in weight "to facilitate searching these items to protect facility order and security" and that "[t]here is no limit on the number of one ounce letters that an offender may receive."

The VDOC's limit is reasonably related to the legitimate penological goals of efficiency and cost savings for streamlining the inspection for prohibited materials. The VDOC's:

---

[6] Plaintiff's argument about "financial deterrents" are not persuasive because he does not establish how any increase in cost is more than de minimis or that such an incidental effect constitutes a constitutional violation. See, e.g., Episcopal Student Found. v. City of Ann Arbor, 341 F. Supp. 2d 691, 701 (E.D. Mich. 2004).

[7] Consequently, Plaintiff's request for a preliminary injunction about this claim is denied. See, e.g., Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 19-22 (2008) (requiring, inter alia, a clear showing for the element of likelihood of success on the merits of the claim related to the preliminary injunction); Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 347 (4th Cir. 2009) (recognizing that each element under Winter must be satisfied).

> [P]revention of incoming contraband has long been acknowledged a valid penological interest due to institutional security concerns. To this end prison staff are required to carefully screen incoming mail. This is a very time consuming task for institutional mail room personnel. The weight limitation on incoming general purpose mail furthers the legitimate governmental interest of institutional security because it allows mail room personnel to quickly scan a shorter document for potential security risks, such as escape plans. Otherwise, mail room personnel may have to sift through tens, or even hundreds, of pages in order to determine whether a security threat was hidden in an otherwise innocuous letter.

Hall v. Johnson, 224 F. Supp. 2d 1058, 1060 (E.D. Va. 2002) (internal citation omitted). Whether the incoming mail is physical or digital, staff's ability to quickly and effectively screen each envelope's enclosure or each email's attachments allows staff to screen more inmates' correspondence quicker and to control the associated costs and security risks that would otherwise occur with an exponentially higher volume of incoming enclosures and attachments. Furthermore, the weight condition is not a deprivation; it is a limitation. Thus, the ability to exercise the right remains with inmates but subject to this reasonable and content-neutral limit. Moreover, the record does not suggest that the photo limit is an exaggerated response. Accordingly, Defendants are entitled to qualified immunity and summary judgment about the quantity of photos per-correspondence.

### C.

Plaintiff's final claim constitutes a facial and as-applied challenge to Defendants' policy implementing 18 U.S.C. § 2257. As already discussed, the as-applied challenge fails as a consequence of Plaintiff's failure to exhaust available administrative remedies. Thus, the facial challenge remains.

"A facial challenge considers the restriction's application to all conceivable parties. . . ." Colo. Right to Life Comm., Inc. v. Coffman, 498 F.3d 1137, 1146 (10th Cir. 2007). There are

three ways in which a plaintiff may facially challenge a regulation under the First Amendment. A plaintiff can demonstrate that: no set of circumstances exists under which the regulation would be valid; the regulation lacks any plainly legitimate sweep; or the regulation is "overbroad" because a substantial number of its applications are unconstitutional, when judged in relation to a plainly legitimate sweep. United States v. Stevens, 559 U.S. 460, 472-73 (2010).

Section 2257(a) regulates depictions of "actual sexual conduct" related to interstate or foreign commerce and produced after November 1, 1990. See 28 C.F.R. § 75.1(c) (defining producer); Connection Distrib. Co. v. Holder, 557 F.3d 321, 325 (6th Cir. 2009) (discussing the statute's application to primary and secondary producers). "Sexually explicit conduct" that does not involve a minor[8] means "actual or simulated . . . (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person[.]" 18 U.S.C. § 2256(2)(A).

The VDOC expands § 2257's focus from "actual sexual conduct" to the VDOC's undefined term "other sexual content." As of August 4, 2015, OP 803.1 requires "[a]ll commercially distributed photographs . . . to have the vendor's identification information and a 18 USC §[]2257 compliance statement, when applicable, affixed to each individual photograph." It further states, "Any distributor or vendor of commercial photographs depicting nudity or other sexual content must include on each photo a statement certifying that they are in compliance with the provisions of 18 USC §[]2257 which requires vendors to verify that the models depicted in the photographs are 18 years of age or older."

---

[8] Section 2257 applies the term "sexually explicit conduct" differently for depictions involving a minor, but there is nothing in the record to indicate that this case involves a minor.

11

OP 803.1 does not define "other sexual content." Such an expansion could perhaps be justified under Turner, but Defendants have not attempted to do so. The VDOC fails to address why it believes it reasonably necessary to protect models by applying § 2257 to undefined "other sexual content" versus the statute's defined "actual sexual conduct."

Plaintiff seeks preliminary injunctive relief concerning OP 803.1's certification requirement. See, e.g., Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). I find that it appears Plaintiff is likely to succeed on the merits of this claim for the reasons already stated. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). The balance of equities tips in Plaintiff's favor as there appears to be a minimal burden, if any, to the VDOC if it limits OP 803.1's "when applicable" certification requirement to "actual sexual conduct" versus "other sexual content." Finally, "upholding constitutional rights surely serves the public interest." Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 521 (4th Cir. 2002).

Accordingly, Plaintiff is granted a preliminary injunction to the extent that the VDOC, through the Defendants in their official capacities, enforce OP 803.1's certification requirement "when applicable" under § 2257 as against Plaintiff for images depicting "sexually explicit conduct" as defined by 18 U.S.C. § 2256 and without regard to the OP's undefined term of "other sexual content."[9] This relief is narrowly drawn, extends no further than necessary to correct the harm, and is the least intrusive means necessary to correct that harm. See 18 U.S.C. § 3626(a)(2). However, this preliminary injunction shall be stayed for sixty-five days to allow the parties to consult via mediation for resolution of the matter.

---

[9] I reiterate that this action does not concern OP 803.1's definition or prohibition of "nudity."

12

## V.

For the foregoing reasons, I grant in part and deny in part Defendants' motion for summary judgment and grant in part and deny in part Plaintiff's motion for a preliminary injunction. The preliminary injunction is stayed for sixty five days while this matter is referred to a magistrate judge for mediation to occur within the next sixty days.

**ENTER**: This _6th_ day of September, 2018.

_Jackson L. Kiser_
Senior United States District Judge