IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DOUGLAS A. HOGLAN, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:16-cv-00595 |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| A. DAVID ROBINSON, et al., | ) | Chief United States District Judge |
|     Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Douglas A. Hoglan, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against various officials employed by the Virginia Department of Corrections ("VDOC"). After two rounds of summary judgment briefing, three claims remained to be tried. On December 12, 2019, Senior United States District Judge Jackson L. Kiser referred the remaining claims to a United States Magistrate Judge for further proceedings, including a bench trial. A bench trial was conducted on January 28 and 29, 2020, and on March 20, 2020, the magistrate judge issued a report recommending that judgment be entered in favor of Hoglan on the remaining claims. Following the filing of objections, the case was referred to another magistrate judge for mediation, and the matter was stayed pending further order. On January 10, 2022, after the mediation proved unsuccessful, the case was transferred to the undersigned. Thereafter, the court lifted the stay and reinstated the case to the active docket.

The case is presently before the court on four pending motions: (1) the defendants' second motion for summary judgment, ECF No. 147, which was granted in part and taken under advisement in part on January 27, 2020; (2) defendant Bernard Booker's oral motion to dismiss, ECF No. 201; (3) Hoglan's renewed motion for reconsideration based upon trial

testimony, ECF No. 206; and (4) Hoglan's motion to consider additional evidence in support of his request for punitive damages, ECF No. 231. For the reasons set forth below, the defendants' second motion for summary judgment is **DENIED as moot**, Booker's oral motion to dismiss is **DENIED**, and Hoglan's motions are **DENIED**.

## I. Defendants' Second Motion for Summary Judgment

On November 1, 2019, the defendants moved for summary judgment on Hoglan's "Secured Messaging Claim" in which he alleged that the defendants violated the First Amendment by prohibiting him from receiving certain images from Sports Illustrated and For Your Eyes Only by email. Defs.' Br. Supp. 2d Mot. Summ. J., ECF No. 148, at 2. The defendants argued that the restrictions were reasonable under the test enunciated in Turner v. Safley, 482 U.S. 78 (1987). Id. at 14. The defendants also asserted that they were entitled to qualified immunity. Id. at 21.

On January 27, 2020, Judge Kiser issued a memorandum opinion addressing the defendants' second motion for summary judgment. With respect to the Secured Messaging Claim, Judge Kiser determined that "further development of the Turner factors [was] necessary and, therefore, [took] the defendants' motion for summary judgment under advisement as to this claim." Mem. Op., ECF No. 188, at 3. An accompanying order provided that the matter "shall proceed to trial as scheduled." Order, ECF No. 189, at 1. The parties subsequently appeared for a bench trial on January 28 and 29, 2020.

The docket reflects that the defendants' second motion for summary judgment remains pending. However, "[o]nce trial began, the summary judgment motion[] effectively became moot." Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 130 (2d Cir. 1999) (quoting Black v.

J.I. Case Co., 22 F.3d 568, 571 (5th Cir. 1994)); see also d'Amico Dry d.a.c. v. Nikka Fin., Inc., 429 F. Supp. 3d 1290, 1296 n.6 (S.D. Ala. Mar. 2, 2019) (noting that the defendant's motion for summary judgment was "moot in light of the fact that the case proceeded to trial"); Graves v. McElderry, 946 F. Supp. 1569, 1572 (W.D. Okla. 1996) (denying cross-motions for summary judgment as moot in light of the decision to proceed to a bench trial). The reason for this is simple: "Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion."[1] Ortiz v. Jordan, 562 U.S. 180, 184 (2011). Consequently, the merits of Hoglan's constitutional claims and the defendants' plea of qualified immunity "must be evaluated in light of the character and quality of the evidence received in court" at trial. Id. Therefore, the defendants' second motion for summary judgment on the Secured Messaging Claim, ECF No. 147, is **DENIED as moot**.

**II.     Booker's Oral Motion to Dismiss**

At the conclusion of the bench trial on January 29, 2020, defense counsel moved to dismiss Bernard Booker as a defendant "for lack of personal involvement in any issues in this case." Jan. 29, 2020 Trial Tr., ECF No. 205, at 195; see also Oral Motion, ECF No. 201. Defense counsel argued that "[t]he only evidence for Mr. Booker was that he responded to a grievance" and that such action on the part of a prison official is not "an adequate basis on which to hold him responsible." Jan. 29, 2020 Trial Tr. at 195.

---

[1] For the same reason, a party may not appeal an order denying summary judgment after a full trial on the merits. Ortiz, 562 U.S. at 184; see also Mackey v. Shalala, 360 F.3d 463, 465-66 (4th Cir. 2004) (declining to review the denial of summary judgment in a case that proceeded to a bench trial) (citing Chesapeake Paper Products Co. v. Stone & Webster Eng'g Corp., 51 F.3d 1229, 1234 (4th Cir. 1995)).

According to the evidence presented at trial, Booker is the former warden of Green Rock Correctional Center, where the actions giving rise to this action occurred. Jan. 28, 2020 Trial Tr., ECF No. 204, at 232. In April 2016, Hoglan filed a regular grievance alleging that an "email containing the 2016 Sports Illustrated Swimsuit Issue covers as attached images was wrongfully denied . . . ." Pl.'s Trial Ex. 7, ECF No. 197-7. Hoglan asserted that the images did not violate existing policies and that he should have been permitted to obtain the images via email. Id. Hoglan further asserted that restricting access to the images violated his constitutional rights and that he was entitled to receive the images. Id. Booker was responsible for responding to Hoglan's regular grievance. Jan. 28, 2020 Trial Tr. at 235. The written response indicates that Booker investigated Hoglan's allegations and determined that the grievance was "*UNFOUNDED* as procedures [were] correctly applied." Pl.'s Trial Ex. 7 (emphasis in original).

Booker sought to be dismissed as a defendant on the basis that denying a grievance does not constitute the type of personal involvement necessary to hold an individual defendant liable under § 1983. See Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) ("To establish personal liability under § 1983, . . . the plaintiff must 'affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights.'") (quoting Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)). The magistrate judge did not address this particular issue in the report and recommendation filed on March 20, 2020. Therefore, the court will consider the issue de novo. See, e.g., Hicks v. Janiszewski, No. 5:13-cv-00140, 2014 U.S. Dist. LEXIS 83410, at *14 (N.D.W. Va. June 19, 2014) (undertaking de novo review of an argument that was not addressed in a report and recommendation).

Booker's argument is based on case law explaining that a prison official's act of responding to a grievance generally does not cause or contribute to a constitutional violation. See, e.g., George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.") (internal citations omitted)). This principle is particularly applicable when an inmate files suit against a prison official who responded to a grievance complaining of past or completed misconduct, such as the use of excessive force. See id. at 609–610 ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). When a grievance alleges an ongoing violation of an inmate's rights, however, a prison official who reviews the grievance can be deemed to have been personally involved in the alleged deprivation. See Wright, 766 F.2d at 850 (concluding that summary judgment was not appropriate on the question of the warden's liability for conditions in the segregation unit since the inmate complained of a continuing problem that may have been within the warden's power to remedy); see also Arocho v. Nafziger, 367 F. App'x 942, 955 (10th Cir. 2010) ("We do not mean to rule out the possibility of liability where the officer denying a grievance has an independent responsibility for the wrong in question and the grievance provides the necessary notice of the wrong or the effective means to correct it."); Harnett v. Barr, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("It has been held that . . . where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is

5

confronted with a situation he can remedy directly.") (internal quotation marks and citations omitted).

Courts have applied this exception in cases similar to this one, where defendants filed grievances alleging that their First Amendment rights were being violated. For instance, in Sutton v. Rasheed, 323 F.3d 236, 249 (2d Cir. 2003), the United States Court of Appeals for the Second Circuit rejected the defendants' contention that a prison administrator was "not personally involved in the complained-of-actions and [was] thus entitled to judgment in [his] favor." The plaintiff in Sutton filed a grievance appeal complaining that prison employees had denied him access to certain religious texts. Id. at 249–50. The prison administrator denied the grievance appeal based on the determination that the requested books were not religious in nature. Id. at 250. Because the prison administrator "appear[ed] to have played an active role" in denying access to the requested texts, the Second Circuit held that "he was not entitled to summary judgment on the grounds that he was not personally involved." Id.; see also Kreider v. Wetzel, No. 3:15-cv-01112, 2016 U.S. Dist. LEXIS 79337, at *10 (M.D. Pa. June 16, 2016), report and recommendation adopted, 2016 U.S Dist. LEXIS 88893 (M.D. Pa. June 16, 2016) (holding that the plaintiff's claim against a prison administrator responsible for denying a grievance could not be dismissed for lack of personal involvement since the administrator "was presented with a grievance that was intended to correct an ongoing violation, namely the deprivation of books that the plaintiff believe[d] he had the First Amendment right to possess") (emphasis in original).

Based on the foregoing case law, the court rejects Booker's argument that a prison official's response to a grievance is never an adequate basis on which to find that the official

6

was personally involved in an alleged constitutional violation. Instead, the question of whether participation in the grievance process is sufficient to establish the requisite personal involvement "depends on the specific facts in the case," including "whether, at the time of the grievance response, the violation is ongoing" and "whether the defendant responding to the grievance has authority to take action to remedy the alleged violation." Davis v. Penzone, No. 2:18-cv-00109, 2020 U.S. Dist. LEXIS 17194, at *25–26 (D. Ariz. Jan. 31, 2020) (citations omitted); see also Sims v. Clarke, No. 7:18-cv-00444, 2019 U.S. Dist. LEXIS 200994, at *6 (W.D. Va. Nov. 20, 2019) (citing Wright, 766 F.2d at 850). Accordingly, Booker's oral motion to dismiss, ECF No. 201, is **DENIED**.[2]

### III. Hoglan's Renewed Motion for Reconsideration

On September 16, 2018, Judge Kiser granted the defendants' motion for summary judgment on Hoglan's claim challenging a five-photograph limit applicable to inmate email and mail correspondence. See Mem. Op., ECF No. 77, at 9–10. Judge Kiser concluded that "[t]he VDOC's limit is reasonably related to the legitimate penological goals of efficiency and cost savings for streamlining the inspection for prohibited materials." Id. at 9. In reaching this decision, Judge Kiser emphasized that the weight restriction is "a limitation" rather than "a deprivation" and that "the record does not suggest that the photo limit is an exaggerated response." Id. at 10.

---

[2] The court notes that this portion of the court's decision only addresses the argument presented in support of the oral motion to dismiss. The magistrate judge's report and recommendation addresses the merits of the underlying constitutional claims against Booker and the other defendants. The parties' objections to the magistrate judge's proposed findings and recommendations, including the defendants' argument that the report does not adequately analyze whether each defendant was personally responsible for the alleged constitutional violations, will be addressed in a separate memorandum opinion.

7

On November 29, 2018, Hoglan filed a motion for reconsideration of the decision to grant summary judgment as to this claim. Pl.'s Mot. Recons., ECF No. 92. In support of the motion, Hoglan argued that the defendants had "misrepresented the regulation," that they had "misled the court to errantly believe that the VDOC imposed a singular weight-based standard . . . across all incoming prisoner mailings," and that new evidence demonstrated that the limit was not rational or content-neutral. Id. at 7, 13. On April 18, 2019, Judge Kiser denied the motion for reconsideration, explaining as follows:

> [Hoglan] raises new arguments against the policy, based on effects that occurred long after he filed this lawsuit in 2015. I find no justification for reversing my ruling on the five-photo limit and permitting the plaintiff to expand the scope of this lawsuit and drag out its disposition in the manner that he proposes. Accordingly, it is hereby **ORDERED** that the motion for reconsideration [ECF No. 92] is **DENIED** . . . .

Order, ECF No. 98.

On March 9, 2020, Hoglan filed a renewed motion for reconsideration "based upon subsequent evidence and testimony brought before the Court during the course of the January 28th-29th bench trial . . . ." Renewed Mot. Recons., ECF No. 206, at 1. Hoglan contends that trial testimony relevant to the five-photo limit demonstrates that the restriction is not universally applied to all commercial publications and therefore supports his claim that the restriction is designed to "unlawfully curb the amount of VDOC-permissible sexual content into their institutions." Id. at 7.

The defendants construed Hoglan's renewed motion for reconsideration as a motion for relief under Federal Rule of Civil Procedure 60(b). By its express terms, however, Rule 60(b) applies only to "final" judgments. Fed. R. Civ. P. 60(b); see also Fayetteville Investors

8

v. Commercial Builders, Inc., 936 F.2d 1462, 1473 (4th Cir. 1993). Because the order granting in part the defendants' motion for summary judgment "did not resolve all claims against all parties," the order "was interlocutory and thus subject to revision at any time" under Rule 54(b). Saint Annes Dev. Co., Inc. v. Trabich, 443 F. App'x 829, 832 (4th Cir. 2011) (citing Fed. R. Civ. P. 54(b)); see also Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003) ("[A] district court retains the power to reconsider its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted.").

"Compared to motions to reconsider final judgments . . . , Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." Carlson v. Boston Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (emphasis in original). Nonetheless, "where, as here, 'the order was entered by one judge and then reviewed by another,' courts have held that the latter judge should be hesitant to overrule the earlier determination." Id. (quoting Harrell v. DCS Equip. Leasing Corp., 951 F.2d 1453, 1460 n.24 (5th Cir. 1992)). Additionally, courts have further "cabined revision pursuant to Rule 54(b) by treating interlocutory rulings as law of the case." Id. Accordingly, "a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." Id. (internal quotation marks, alteration, and citation omitted).

Here, Hoglan does not identify any change in controlling law that would warrant reconsideration of Judge Kiser's rulings. Although Hoglan contends that the motion is "based

9

upon trial testimony," Pl.'s Renewed Mot. Recons. at 1, he has not shown that the evidence adduced at trial was "substantially different" than the evidence presented in support of his first motion for reconsideration. Carlson, 856 F.3d at 325. When Hoglan attempted to question one of the defendants about the five-photo limit, defense counsel objected to that line of questioning, and the magistrate judge sustained the objection. See Jan. 28, 2020 Trial Tr. at 50 ("That claim has been dismissed so we're not going to get into it."). Moreover, the reason provided for the line of questioning—that the five-photo limit "targets DOC permissible content"—is the same argument that was made in support of Hoglan's first motion for reconsideration. Id.; see also Pl.'s Mem. Supp. 1st Mot. Recons at 1–4 (asserting that the five-photo limit was "deliberately enacted to target . . . protected speech" and citing additional evidence to support the argument that commercially-distributed photographs are treated differently than other commercial mailings). Thus, the evidence adduced at trial was not substantially different from that presented to Judge Kiser.

Additionally, Hoglan has not shown that Judge Kiser's previous rulings amounted to "clear error causing manifest injustice." Carlson, 856 F.3d at 325. Under existing precedent, "a prior decision does not qualify for the clearly erroneous exception to the law of the case doctrine by being just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish." L.J. v. Wilbon, 633 F.3d 297, 311 (4th Cir. 2011) (internal quotation marks and citation omitted). "In other words, it must be dead wrong." Id. Here, Hoglan has not shown that Judge Kiser was "dead wrong" in granting summary judgment on the Secured Messaging Claim or denying Hoglan's first motion for

reconsideration. Accordingly, Hoglan's renewed motion for reconsideration, ECF No. 206, is **DENIED**.

### IV. Hoglan's Motion to Consider Additional Evidence

On May 10, 2021, Hoglan filed a motion requesting that the court consider additional evidence in determining whether to award punitive damages. In particular, Hoglan alleges that the VDOC has implemented new restrictions since the parties appeared for trial in January 2020 that "effectively bar Hoglan and other prisoners from . . . receiving . . . the same images in photographic print form as well." Pl.'s Mot. Consider Add'l Evid., ECF No. 231, at 1. Hoglan argues that the new restrictions should be considered in determining whether punitive damages are appropriate in this case. Id. This argument is without merit.

A claim for punitive damages is "derivative in nature." Graham v. Am. Cyanamid Co., 350 F.3d 496, 514–15 (6th Cir. 2003). "In other words, if the defendant[s] cannot be held liable for the underlying wrong, a plaintiff's derivative claim for punitive damages is barred." Roche v. Lincoln Prop. Co., 175 F. App'x 597, 606 (4th Cir. 2006); see also Dunham v. Covidien, LP, 498 F. Supp. 3d 549, 566 (S.D.N.Y. 2020) (explaining that a claim for punitive damages "possesses no viability absent its attachment to a substantive cause of action") (internal quotation marks and citation omitted). Likewise, "[o]nly evidence which is relevant to the [underlying] conduct for which liability is imposed can support an award of punitive damages." Burke v. Deere & Co., 6 F.3d 497, 511 (8th Cir. 1993); see also Williams v. ConAgra Poultry Co., 378 F.3d 790, 797 (8th Cir. 2004) ("In assessing [an award of punitive damages], it is crucial that a court focus on the conduct related to the plaintiff's claim rather than the conduct of the defendant in general."); Montoya v. Shelden, 898 F. Supp. 2d 1279, 1299 (D.N.M. 2012)

11

("The Supreme Court has made clear that punitive damages are intended to punish a defendant for reprehensible conduct in this case, not for conduct in other similar, unrelated cases.") (citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 422–23 (2003)).

The additional evidence cited in Hoglan's motion is clearly unrelated to the claims asserted in the underlying action. Whereas the remaining claims in the operative amended complaint challenge the constitutionality of a policy that prohibits inmates from receiving semi-nude images via email and the decision to prohibit Hoglan from possessing certain semi-nude images, the current motion asks the court to consider new restrictions applicable to printed catalog sheets from commercial vendors. Because the new restrictions are different from those contested at trial, they cannot be considered in determining whether to award punitive damages. Accordingly, Hoglan's motion to consider additional evidence, ECF No. 231, is **DENIED**.

##### V. Conclusion

For the reasons stated, the defendants' second motion for summary judgment on the Secured Messaging Claim, ECF No. 147, is **DENIED as moot**; Booker's oral motion to dismiss, ECF No. 201, is **DENIED**; Hoglan's renewed motion for reconsideration, ECF No. 206, is **DENIED**; and Hoglan's motion to consider additional evidence, ECF No. 231, is **DENIED**.

The Clerk is directed to send a copy of this memorandum opinion and order to the parties.

It is so **ORDERED**.

Entered: March 28, 2022

Michael F. Urbanski
Chief U.S. District Judge
2022.03.28 14:42:03
-04'00'

Michael F. Urbanski
Chief United States District Judge

13